# IN THE UNITED STATES DISTRICT COURT

## FOR THE DISTRICT OF OREGON

| | |
|---|---|
| **APRIL V.**[1], | Case No. 6:23-cv-163-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **MARTIN O'MALLEY**, Commissioner of Social Security, | |
| Defendant. | |

Katherine L. Eitenmiller and Katie J. Taylor, WELLS, MANNING, EITENMILLER & TAYLOR PC, 474 Willamette Street, Eugene OR 97401. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Executive Assistant United States Attorney, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; Sarah Moum, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

April V. (Plaintiff) seeks judicial review of the final decision of the Commissioner of the

Social Security Administration (Commissioner) denying Plaintiff's application for Disability

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Insurance Benefits (DIB). For the reasons discussed below, the Court reverses the decision of the Commissioner and remands this case for further proceedings.

## STANDARD OF REVIEW

The decision of the administrative law judge (ALJ) is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla" and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

**BACKGROUND**

**A.  Plaintiff's Application**

Plaintiff protectively filed an application for DIB on June 29, 2020, initially alleging a disability onset date of August 8, 2016. AR 14, 159-60. Plaintiff amended her alleged onset date to June 14, 2018. AR 180. Plaintiff was born on April 3, 1972, AR 159, and was 46 years as of her amended alleged onset date. Plaintiff has been working as a client liaison for the Oregon Veterinary Referral Associates (OVRA) since 2016, but began her work with OVRA in 2014 as a veterinary assistant. AR 39, 260. Plaintiff alleges that she was no longer able to fulfill her duties as a veterinary assistant due to her mental and physical impairments, and as a response, her employer created the position of client liaison as an accommodation. *Id.*

The agency denied Plaintiff's claims both initially and upon reconsideration. AR 90-98. On July 27, 2021, Plaintiff requested a hearing before an ALJ. AR 99-100. Plaintiff and her attorney appeared for a hearing via telephone before ALJ Sullivan on February 2, 2022. AR 30-52. On February 23, 2022, the ALJ issued a decision finding Plaintiff not disabled because she had engaged in substantial gainful activity (SGA). AR 14-17. Plaintiff requested the Appeals Council review the ALJ's decision. AR 156-58. On December 1, 2022, the Appeals Council denied Plaintiff's request for review. AR 1-7. Accordingly, the ALJ's decision became the final agency decision from which Plaintiff now seeks review.

**B.  The Sequential Analysis**

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful activity? (2) Is the claimant's impairment severe? (3) Does the impairment meet or equal one of a list of specific impairments described in the regulations? (4) Is the claimant able to perform any work that he or she has done in the past? and (5) Are there significant numbers of jobs in the national economy that the claimant can perform?

*Id.* at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If the analysis continues beyond step three, the ALJ must evaluate medical and other relevant evidence to assess and determine the claimant's "residual functional capacity" (RFC).

The claimant bears the burden of proof at steps one through four. *Bustamante v. Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099; *see Bustamante*, 262 F.3d at 954.

**C.  The ALJ's Decision**

As an initial determination for Plaintiff's DIB claim, the ALJ concluded that Plaintiff met the insured status requirement of the Social Security Act (Act) through December 31, 2025. The ALJ then proceeded to the sequential analysis. At step one, the ALJ dispositively found that

Plaintiff has engaged in SGA since June 14, 2018, the amended alleged onset date. AR 16. The ALJ found that Plaintiff has continuously engaged in SGA, and that her earnings reflect continuous work-related income that exceeds the level demonstrating SGA. AR 17. The ALJ also found that "[t]here has been no continuous 12-month period during which [Plaintiff] has not engaged in substantial gainful activity." *Id*. Due to Plaintiff's SGA, the ALJ concluded that Plaintiff was not disabled as defined by the Act. *Id*.

## DISCUSSION

The only issue on appeal is whether the ALJ erred in disposing of Plaintiff's claim at step one of the sequential analysis. Plaintiff asserts that the ALJ erred by disposing of her claim at step one for two reasons. First, Plaintiff argues that her work was completed under special conditions. Second, Plaintiff argues that her employer subsidized her income, thus she did not engage in SGA.

### A.  Substantial Gainful Activity Legal Standard

"A person is disabled only if his impairments make him unable to engage in 'substantial gainful work.'" *Katz v. Sec'y of Health & Hum. Servs.*, 972 F.2d 290, 293 (9th Cir. 1992) (quoting 42 U.S.C. § 423(d)(2)). "The concept of substantial gainful activity involves the amount of compensation and the substantiality and gainfulness of the activity itself." *Keyes v. Sullivan*, 894 F.2d 1053, 1056 (9th Cir. 1990) (citations omitted). At step one of the five-step evaluation, "[w]hen an individual is actually engaging in SGA or did so during any pertinent period, and there is no possibility of establishing a period of disability which ended prior to the date of the decision, a finding shall be made without consideration of either medical or vocational factors that the individual is not under a disability." Social Security Ruling (SSR) 86-8, *available at* 1986 WL 68636, at *2.

"Generally, if you worked for substantial earnings, we will find that you are able to do substantial gainful activity." 20 C.F.R. § 416.974(a)(1). As the Social Security Administration's Program Operations Manual Systems (POMS) explains, the threshold for SGA for non-blind individuals ranged from $1,180 to $1,350 per month during the years 2018-2022, which encompass the time from Plaintiff's alleged disability onset date to when the ALJ issued his decision. POMS DI 10501.015. "To determine [a claimant's] initial eligibility for benefits, [the agency] will average any earnings [she] make[s] during the month [she] file[s] for benefits and any succeeding months to determine if [she is] doing substantial gainful activity." 20 C.F.R. § 416.974a(a).

A claimant may rebut the presumption of SGA if she can show that she was working "under special conditions that take into account [the claimant's] impairment, such as work done in a sheltered workshop or as a patient in a hospital." 20 C.F.R. § 404.1573(c). Examples of special conditions include, but are not limited to:

> (1) [the claimant] required and received special assistance from other employees in performing . . . work;
>
> (2) [the claimant was] allowed to work irregular hours or take frequent rest periods;
>
> (3) [the claimant was] provided with special equipment or [was] assigned work especially suited to [his or her] impairment;
>
> (4) [the claimant was] able to work only because of specially arranged circumstances, for example, other persons helped [him or her] prepare for or get to and from . . . work;
>
> (5) [the claimant was] permitted to work at a lower standard of productivity or efficiency than other employees; or
>
> (6) [the claimant was] given the opportunity to work despite [his or her] impairment because of family relationship, past association with [the] employer, or [the] employer's concern for [the claimant's] welfare.

*Id.* Even when work is performed under special conditions, however, that does not mean the work is not SGA. Indeed, "work done under special conditions may show that [a claimant has] the necessary skills and ability to work at the substantial gainful activity level." *Id.*

Furthermore, even when a claimant's earnings show that she has done SGA, the agency may exclude certain portions of income if it concludes that the claimant's work was subsidized. 20 C.F.R. § 404.1574(a)(2). Work is considered subsidized "if the true value of [the claimant's] work, when compared with the same or similar work done by unimpaired persons, is less than the actual amount of earnings paid to [the claimant] for [the] work." *Id.* The Social Security Administration explains that "because of a benevolent attitude toward" a disabled person, an employer may subsidize earnings "by paying more in wages than the reasonable value of the actual services performed." SSR 83-33, *available at* 1983 WL 31255, at *3. The ruling sets forth circumstances that "indicate the strong possibility of a subsidy," including: (a) "[t]he employment is 'sheltered'"; (b) "[t]here appears to be a marked discrepancy between the amount of pay and the value of the services"; (c) "[t]he employer, employee, or other interested party alleges that the employee does not fully earn his or her pay (e.g., the employee receives unusual help from others in doing the work)"; and (d) "[t]he nature and severity of the impairment indicate that the employee receives unusual help from others in doing the work." *Id.* at *4.

## B. Background

Plaintiff testified that she began working for OVRA in 2014 as a surgical assistant. AR 36. She stated that she assisted during veterinary surgery by opening the sterile surgical packs and "giving the surgeon the correct tools needed at the right time during surgeries." *Id.* She explained that she "was handling drills" as well as "retracting and standing for long periods of time." *Id.* Plaintiff testified that she got to point where she was "unsteady on [her] feet and [she] was unable to do any type of retracting or holding of any of the heavier surgical equipment."

AR 37. As a response, OVRA created a new position in 2016 for Plaintiff as a "client liaison" and she was able to continue to work in that position. AR 39. This position consisted of client education, prescription refill processing, and conducting all post-operative surgical calls. AR 260. Plaintiff worked four hours a day, four days per week in this position at OVRA. *Id*.; *see also* AR 39.

The ALJ found that Plaintiff's earnings record "reveals continuous work-related income that exceeds the level demonstrating [SGA]." AR 17 (citing AR 170-73, 175-76). The record reflects that Plaintiff earned an average monthly income of $1,428.61 in 2018. AR 172, 174. In 2019, Plaintiff's monthly income averaged $1,681.92, and in 2020 her average monthly income was $1,716.53. *Id*. In 2021, the record reflects that Plaintiff earned approximately $1441.11 per month for the first three quarters of the year. AR 175.

Plaintiff concedes that her earnings exceed the amount set forth in the earning guidelines, but argues it was subsidized. The ALJ noted Plaintiff's argument and the evidence that her employer acknowledged that Plaintiff's productivity was about half of other employees, that she worked fewer and irregular hours, performed lesser duties, and was permitted additional breaks and lower production and quality standards. AR 17. The ALJ, however, also emphasized that Plaintiff's employer could not identify any specific amount that Plaintiff's pay was subsidized and identified Plaintiff's pay scale and benefits as being based on Plaintiff's seniority. *Id.* (citing AR 169). Thus, the ALJ concluded that Plaintiff failed to show that her overall compensation was subsidized as opposed to being due to her seniority and her "extensive knowledge and experience." *Id.*

**C.  Analysis**

**1.  Special Conditions**

Plaintiff first argues that she did not engage in SGA due to special conditions. The special conditions she alleges are fewer or irregular hours, special equipment, more rest periods, fewer or easier duties than her coworkers, and work suited to her condition. AR 184. The Commissioner cites 20 C.F.R. § 404.1573(c) to argue that despite Plaintiff's allegations that she takes frequent breaks, is frequently absent, and asks for help, this does not undermine the fact that she retains "the necessary skills and ability to work at the substantial gainful activity level." The Court disagrees.

If a claimant is working under special conditions that take into account her impairments, the work may not demonstrate SGA. 20 C.F.R. § 416.973(c). Examples of special conditions include receiving assistance from other employees in performing the work, being allowed to work irregular hours or take frequent rest periods, being provided special equipment, being assigned work especially suited to the impairment, being permitted to work at a lower standard of productivity or efficiency, and being given work because of a family relationship or past association with the employer. *Id*. Plaintiff's position as a client liaison satisfies the majority of the special conditions identified in the regulations.

First, Plaintiff's position was specifically created for her because OVRA "valued [her] work there and because of [her] relationship with the doctor" and staff. AR 39. Second, her new position as a client liaison was created with her impairments in mind. AR 260 ("This position was actually tailored to [Plaintiff's] limitations."). She speaks with clients on the phone post-surgery, fills prescriptions, and educates clients. *Id*.; *see also* AR 39. By contrast, her former position as a veterinary assistant required her to stand for several hours and handle surgical tools that varied in weight. Third, the record demonstrates that Plaintiff sometimes must "have another

coworker finish [her] phone call or finish [her] visit with the client because [she has] to go and take a break[.]" AR 40. Fourth, Plaintiff works irregular and fewer hours than her coworkers, takes more rest periods, and has more absences. AR 184, 260. Her employer stated that it is "a challenge for [Plaintiff] to make a full week of work without an absence." AR 260. Indeed, In a Work Activity Questionnaire completed in 2020, Plaintiff's employer reported that Plaintiff does not complete her tasks, cannot complete her job duties without special assistance, does not regularly report to work as scheduled, performs at 50% of the productivity of her coworkers, and receives the following special assistance not provided to other employees: (a) fewer or easier duties; (b) irregular hours; (c) less hours; (d) more breaks or rest periods; (e) lower production standards; (f) extra help or supervision; (g) lower quality standards; and (h) frequent absences. AR 168-69.[2]

Contrary to the ALJ's finding that "[Plaintiff]'s extensive knowledge and experience provides value to the company justifying the expense of her services[,]" AR 17, her supervisor explicitly stated that OVRA would need to "replace [Plaintiff] with a[n] employee that can work more hours, and have a better attendance record." AR 260. Moreover, Plaintiff's supervisor stated that "[Plaintiff] is a liability to our business, as she is very unsteady on her feet, she has many absences due to her physical health, which is a hardship on the business." *Id.*

The Commissioner's assertion that Plaintiff's duties as a client liaison are more akin to the circumstances in *Katz* is without merit. The claimant in *Katz* performed the same job duties before and after her need for accommodation. *Katz*, 972 F.2d at 291-92. Her accommodations

---

[2] In discussing the issue of subsidized income, the Commissioner argues that this Questionnaire relates to Plaintiff's former job of "Veterinary Assistant" because that is the job title listed on the form. As discussed below, at a minimum this was an ambiguity that the ALJ was required to address.

were described as "relatively minor" and made "for comfort." *Id.* at 294. She reduced working by 10 hours per week and was moved to a smaller, quieter office. *Id.* at 291-92. Her employer completed a form stating that her work *was* worth what she was paid. *Id.* at 293-94. The Ninth Circuit found Katz's accommodations did not constitute a special work environment. Rather, the Court of Appeals indicated Katz's case was similar to other decisions rejecting the claim that a special work environment existed. *Id.* at 294 (citing *Garnett v. Sullivan*, 905 F.2d 778 (4th Cir. 1990) (work as a bus driver involving minimal time per day is typical of bus driving positions and SGA); *Wright v. Sullivan*, 900 F.2d 675 (3d Cir. 1990) (work as rape counselor in very flexible circumstances is SGA); *Beasley v. Califano*, 608 F.2d 1162 (8th Cir. 1979) (despite limits and difficulty, part-time work as a real estate broker is SGA)).

Here, Plaintiff's shift from her position as a veterinary assistant to client liaison are not akin to the circumstances in *Katz*, *Wright*, or *Beasley*. Plaintiff had a position specially created for her limitations, with a significant change in duties. She no longer has to stand for several hours during veterinary surgery, do any "retracting or holding of . . . the heavier surgical equipment[,]" or help with the sutures of animals under anesthesia. AR 36-37. As discussed above, Plaintiff also receives significant special accommodations in productivity, absences, breaks, and other assistance. Beyond the bare assertion that Plaintiff's work as a client liaison is not sheltered work, the ALJ does not provide any analysis for how he made this determination. Without the ALJ offering more than a stated conclusion, the Court is unable meaningfully to review whether the ALJ properly considered Plaintiff's special conditions as required by 20 C.F.R. § 416.973(c). *See Brown-Hunter v. Colvin*, 806 F.3d 487, 495 (9th Cir. 2015) (a court "cannot substitute [its own] conclusions for the ALJ's, or speculate as to the grounds for the ALJ's conclusions. Although the ALJ's analysis need not be extensive, the ALJ must provide

some reasoning in order for [the court] to meaningfully determine whether the ALJ's conclusions were supported by substantial evidence." (quoting *Treichler v. Comm'r of Soc. Sec.*, 775 F.3d 1090, 1103 (9th Cir. 2014))). Accordingly, the Court concludes that the ALJ harmfully erred in his evaluation of Plaintiff's special conditions at OVRA.

### 2. Subsidized Income

Plaintiff also argues that her employment at OVRA was subsidized. Plaintiff's employer reported a fifty-percent subsidy to her income. AR 168. Plaintiff's supervisor filled out a Work Activity Questionnaire in 2020 and checked a box stating Plaintiff's productivity compared to other employees in similar positions and pay rates is "50% or less of other employees' productivity." *Id.* The Commissioner argues that this questionnaire does not reflect Plaintiff's client liaison position at OVRA, nor any subsidized income during the relevant period, because her supervisor filled out the form and wrote "veterinary assistant" as Plaintiff's job title. *Id.*

While her supervisor did write Plaintiff's former job title of veterinary assistant on the form, it was completed in 2020, and Plaintiff was moved to the position of client liaison in 2016. *See* AR 37. There is no indication that Plaintiff's supervisor was completing the form about Plaintiff's work from four years before. Additionally, the questions and answers on the form are in present tense, including the handwritten answers. This supports that the form refers to Plaintiff's then-current position of client liaison. At a minimum, there is an ambiguity in the record that the ALJ was responsible to resolve considering the outcome of Plaintiff's claim primarily is dependent on whether Plaintiff's work was subsidized or subject to special conditions, which are both addressed in this questionnaire. The ALJ has a duty to further develop the record where the evidence is ambiguous or the ALJ finds that the record is inadequate to allow for proper evaluation of the evidence. *Mayes v. Massanari*, 276 F.3d 453, 459-60 (9th Cir. 2001); *Tonapetyan v. Halter*, 242 F.3d 1144, 1150 (9th Cir. 2001). A specific finding of

ambiguity or inadequacy in the record is not required to trigger the necessity to further develop the record where the record itself establishes the ambiguity or inadequacy. *McLeod v. Astrue*, 640 F.3d 881, 885 (9th Cir. 2011).

Regarding subsidization, Plaintiff presented evidence to demonstrate that her work productivity was far less in comparison to her coworkers. The ALJ pointed only to Plaintiff's supervisor's statement that "[Plaintiff]'s pay scale and benefits are based on seniority." AR 17 (citing AR 169). The ALJ failed to consider the rest of Plaintiff's supervisor's statement that "[Plaintiff]'s work and number of hours worked are significantly reduced to accommodate her disability." AR 169. Nor did the ALJ consider Plaintiff's employer's statements regarding the significant accommodations provided to Plaintiff that no other employee receives, AR 168, and how that intersects with Plaintiff being allowed productivity at 50% of other employees. The mere fact that OVRA *set* Plaintiff's salary based on her seniority says nothing about whether Plaintiff's overall compensation was worth the *work she performed*.

Ultimately, the question of whether OVRA subsidized Plaintiff's income was left unanswered by the ALJ. The ALJ reasoned:

> By the employer's own reckoning, [Plaintiff]'s compensation is justified by her *seniority* with the company. [Plaintiff] explained at [the] hearing that her employer crafted a new job position that specifically accounted for her various symptoms. While [Plaintiff]'s work hours are significantly lower than before, it is reasonable to conclude her extensive knowledge and experience provide[d] value to the company justifying the expense of her services.

AR 17.

As noted, Plaintiff's employer stated that Plaintiff was only 50% as productive as other employees. AR 169. The Commissioner previously concluded that equated to a 50% subsidy. *See* AR 203. If the ALJ did not consider the productivity evidence by the employer to equate to the

amount of subsidy given to Plaintiff, the ALJ needed to conduct the proper analysis that SSR 83-33 requires.

SSR 83-33 explains that an employer "desiring to subsidize the earnings of handicapped workers may designate a specific amount as such, after figuring the reasonable value of their services." SSR 83-33, available at 1983 WL 31255, at *4. If the employer fails to calculate a specific amount of subsidized income, "then it will be necessary to obtain answers to the questions outlined in this section[:]"

- Why was the individual hired?
- What are the individual's job duties?
- How much time does the individual spend on those duties?
- Who did the job before the individual was hired; and how much time did that person spend on the duties of the job?
- If the individual were separated from the job, would he or she be replaced; if so, how much time would the replacement spend on the individual's duties?
- How often is the individual absent from work?
- Does someone else do the individual's work when he or she is absent?
- How much time does the temporary replacement take to do the individual's job?
- How are the individual's total earnings computed?
- Is the individual's pay reduced proportionately when he or she is absent from work? (Compare the employer's practice concerning the impaired individual to that which applies to unimpaired workers, explaining any difference.)
- Does the individual receive any unusual assistance or supervision? (Describe.)
- If the individual's pay is not set according to normal business practices, what consideration is given to the size of the individual's family, number of years of past service with the employer, previous earnings, friendship or relationship to the employer, or other factors unrelated to the performance of the work?
- Does the employer consider the individual's work to be worth substantially less than the amount paid and, if so, what are the employer's reasons for this view? (Give the employer's estimate of the value of the services and explain how this estimate was reached.)
- If the individual is still on the payroll, despite unsatisfactory work, what is the employer's reason for retaining him or her?

PAGE 14 – OPINION AND ORDER

- If the individual is no longer employed, what led to the termination of employment?

*Id.* at *4-5.

Plaintiff's employer provided answers to some of these questions. *See, e.g.*, AR 168, 260. The ALJ, however, did not address those explanations in his decision. Notably, the ALJ took issue with the fact that Plaintiff's employer failed to provide an explanation as to "why [Plaintiff] is permitted to remain on the payroll despite 'unsatisfactory' work." AR 17. The ALJ, however, needed fully and fairly to develop the record, and could have asked Plaintiff's employer to provide a more complete answer to that particular question, among others. Particularly because the outcome of the case was dependent, in part, on the issue of subsidized income.

"An ALJ's failure to analyze the subsidy issue in a meaningful manner under SSR 83-33 may necessitate remand." *Griggs v. Astrue*, 2011 WL 4591079, at *4 (E.D. Cal. Sep. 30, 2011) (citing cases); *see also Rossello v. Astrue*, 529 F.3d 1181, 1185-86 (D.C. Cir. 2008) (reversing and remanding where decision that claimant had engaged in SGA was not supported by evidence or proper analysis under SSR 83-33); *Johnson v. Astrue*, 2011 WL 972119, at *10-12 (D.S.D. Mar. 16, 2011) (reversing decision that plaintiff engaged in SGA where SSR 83-33 required deduction of subsidized earnings based on evidence that plaintiff received wage subsidies and special accommodations); *Atkinson v. Astrue*, 2009 WL 198027, at *4 (D. Colo. Jan. 28, 2009) (remanding where ALJ's decision was "devoid of any substantive analysis relating to the tests used to determine Plaintiff's SGA as set forth in SSR 83-33" and applicable regulations). This is such a case.

In addition, even when conforming to the applicable regulations, the minimum earnings amount raises only a rebuttable presumption of SGA. *Corrao v. Shalala*, 20 F.3d 943, 948 (9th Cir. 1994); *Keyes*, 894 F.2d at 1056. That presumption created by the earnings test may be

rebutted based upon the responsibilities and skills required to perform the work, the amount of time spent working, the quality of the work, special working conditions among other factors. *Corrao*, 20 F.3d at 948; *Katz*, 972 F.2d at 293-94; *Keyes*, 894 F.2d at 1056. At the administrative hearing in this case and within the record, Plaintiff presented evidence that can be fairly characterized as rebutting the SGA presumption. Yet, the ALJ's brief treatment of the issues, set forth in its entirety above, did not address that evidence. Accordingly, the ALJ failed to apply the correct legal standards in finding that Plaintiff had engaged in SGA since August 8, 2016.

**D.  Remand**

The Court reverses the Commissioner's decision because the ALJ did not comply with 20 C.F.R. § 404.1573 in considering special conditions, 20 C.F.R. § 404.1574 in considering subsidization, and SSR 83-33 in developing the record and analyzing subsidies. As a result, the decision that Plaintiff engaged in SGA is not supported by substantial evidence. This matter is remanded for a new hearing and a new decision that properly considers and applies the regulations and the guidelines set forth in SSR 83-33. *See Terry v. Sullivan*, 903 F.2d 1273, 1275 n.1 (9th Cir. 1990) ("While lacking the force of law, [Social Security] rulings constitute the Social Security Administration's official interpretations of the statute it administers and of its own regulations. As such, they are binding on ALJ's") (citations omitted))

**CONCLUSION**

The Court REVERSES the Commissioner's decision that Plaintiff was not disabled and REMANDS for further proceedings consistent with this Opinion and Order.

**IT IS SO ORDERED**.

DATED this 29th day of July, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge